# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS BLANTON WILLIAMS, III, | ) | CASE NO. 1:15cv00567 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CHARLOTTE JENKINS, Warden | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

Petitioner, Thomas Blanton Williams, III ("Williams"), challenges the constitutionality of his conviction and sentence in the case of *State v. Williams*, Cuyahoga County Court of Common Pleas Case No. CR-12-562386-A.  Williams, *pro se*, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on March 24, 2015.  On November 12, 2015, Warden Charlotte Jenkins ("Respondent") filed her Return of Writ.  (Doc. No. 5.)  For reasons set forth in detail below, it is recommended that Williams's Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Williams' conviction as follows:

> {¶ 1} A jury found defendant-appellant Thomas Williams III guilty of felonious
> assault for kicking a teenaged boy in the mouth following a verbal altercation. The
> court also found Williams guilty of a notice of prior conviction and a repeat
> violent offender specification. Williams was sentenced to four years incarceration.

> {¶ 2} At trial, several witnesses described the following events taking place on
> May 2, 2012. A group of teenaged boys were playing basketball in the parking lot
> of a church in Cleveland when an adult male attempted to cross the parking lot.
> For unknown reasons, this individual started shouting profanities at one of the
> boys. The two were exchanging heated words when another one of the teenagers
> intervened in an effort to defuse the situation. The teen placed himself between
> the two, however when he tried to walk away, he was "round-house" kicked in the
> mouth by the man. After the assault, the man walked away leaving the church
> grounds. Several of the witnesses were able to give police a general description of
> the assailant. Williams matched the description given and was found by police
> eight blocks away from the church.

*State v. Williams*, 2013 WL 4140073, at *1 (Ohio App. 8th Dist. August 15, 2013).

## II. Procedural History

**A.  Conviction**

On May 14, 2012, a Cuyahoga County Grand Jury charged Williams with one count of

felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(1), including a notice of prior

conviction under Ohio Rev. Code § 2929.13(F)(6) and a repeat violent offender specification

pursuant to Ohio Rev. Code § 2941.149(A); and two counts of intimidation, in violation of Ohio

Rev. Code § 2921.03(A).  (Doc. No. 5-3.)

On October 18, 2012, a jury found Williams guilty on the charge of felonious assault.

The trial court found him guilty of the specifications of notice of prior conviction and repeat

violent offender.  (Doc. No. 5-4.)  On November 20, 2012, the trial court sentenced him to four

years in prison.  (Doc. No. 5-5.)

-2-

**B.    Direct Appeal**

On December 19, 2012, Williams, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 5-10.)  In his appellate brief, Williams raised the following assignments of error:

1.    Whether Appellant was denied due process because the evidence presented was not legally sufficient to support conviction for felonious assault?

2.    Whether Appellant was denied due process because, based on the evidence presented, the jury verdict was against the manifest weight of the evidence?

(Doc. No. 5-12 at iii.)  The State filed its brief in opposition on April 9, 2013.  (Doc. No. 5-13.)

On August 15, 2013, the state appellate court issued its decision affirming the trial court's judgment.  *Williams*, 2013 WL 4140073, at *3.  (Doc. No. 5-14.)  A review of the Supreme Court of Ohio's online docket indicates Williams has not appealed the state appellate court's ruling.

**C.    Application to Reopen**

On November 12, 2013, Williams, *pro se*, filed an Application for Reopening pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. No. 5-15.)  Williams claimed that "appellate counsel's performance was deficient and failed to meet an acceptable legal standard by his failure to raise the importnat [sic] counstitutional [sic] issue of trial counsel's ineffectiveness."[1]  (Doc. No. 5-15 at 4.)  The State did not respond to Williams' application.

On March 18, 2014, the state appellate court denied Williams' application on the ground that it was barred from further review by the doctrine of *res judicata*.  *State v. Williams,* 2014

---

[1]  Specifically, Williams avers that trial counsel "failed to properly cross examine each of the state's witnesses regarding their credibility, their internal inconsistency, and their conflicting testimony with each other's testimonies."  (Doc. No. 5-15 at 3.)

WL 1340222, at *2 (Ohio App. 8th Dist. March 18, 2014).  (Doc. No. 5-17.)

On April 14, 2014, Williams, again *pro se*, filed a Notice of Appeal in the Supreme Court of Ohio.  (Doc. No. 5-19.)  In his Memorandum in Support of Jurisdiction, he asserted the following proposition of law:

> Appellant was denied his Sixth Amendment constitutional right to effective assistance of appellate counsel.

(Doc. No. 5-20 at 9.)  The State waived response.  (Doc. No. 5-18.)  On May 28, 2014, jurisdiction was declined.  (Doc. No. 5-21.)

**D.     Federal Habeas Petition**

On March 24, 2015, Williams filed a timely *pro se* Petition for Writ of Habeas Corpus. His Petition asserts the following four grounds for relief:

> **Ground One**:     Whether [Williams] was denied due process because the evidence presented was not legally sufficient to support conviction for felonious assault?
>
> **Ground Two**:     Whether [Williams] was denied due process because based on the evidence presented, the jury verdict was against the manifest weight of the evidence?
>
> **Ground Three**:     Whether [Williams] was denied due process because of ineffective assistant of appellant counsel for not bring[ing] up ineffective assistant of trial counsel?
>
> **Ground Four**:     Whether [Williams] was denied due process because based on the ineffective assistant of his trial counsel?

(Doc. No. 1.)  Respondent filed a Return of Writ on May 28, 2015.  (Doc. No. 5.)  Williams did not file a traverse.

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for

precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough   a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007).

**C.    Application to Williams' Habeas Claims**

**1.    Grounds One and Two**

Respondent argues that Williams' first two grounds for relief are unexhausted.  (Doc. No. 5 at 18.)  Nonetheless, Respondent maintains that a stay is inappropriate because the first ground for relief is plainly meritless and the second ground for relief presents a state law issue not cognizable upon federal habeas review. *Id*. at 18, 23.  This Court agrees the claims are unexhausted, but, nevertheless, addresses the merits below to the extent they present cognizable claims.

### 2.      Grounds Three and Four

Respondent argues that Williams' third and fourth claims are procedurally defaulted, because the last state court to review the claims found them barred on the ground of *res judicata*. (Doc. No. 5 at 24-26.)  Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.  *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967).  The Sixth Circuit repeatedly has held that Ohio's *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions.  *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

In his third ground for relief, Williams claims his appellate counsel provided ineffective assistance by failing to raise on direct review a claim of ineffective assistance of trial counsel. He complained that trial counsel, among other things, failed to impeach a State witness with a prior inconsistent statement and another witness' conflicting trial testimony, and present certain expert and fact witnesses.  (Doc. No. 1 at 4, 6.)  Williams' fourth ground for relief asserts the same claim of trial counsel ineffective assistance that forms the basis of his appellate counsel ineffective assistance claim.  *Id*. at 7-8.

Williams raised his ineffective assistance of appellate counsel claim in state court through a Rule 26(B) application for reopening.  (*See* Doc. No. 5-15 at 7-9; Doc. No. 5-20 at 10.)  The state appellate court, the last court to consider the claim, construed it as a manifest weight of the evidence claim, stating:

{¶ 7} Williams's sole proposed assignment of error, in support of his claim of

ineffective assistance of appellate counsel, is that:

> Defendant was denied effective [a]ssistance of [c]ounsel when
> [trial counsel] failed to properly examine each of the state's
> witnesses regarding their credibility, their internal inconsistency,
> and their conflicting testimony with each other's testimonies.

> {¶ 8} Williams, through his sole proposed assignment of error, essentially argues
> that his conviction was against the manifest weight of the evidence. Specifically,
> Williams argues that the trier of fact clearly lost its way based upon the credibility
> of the state's witnesses, inconsistent testimony, and conflicting testimony.

*Williams,* 2014 WL 1340222, at *2.  The appellate court then found the claim procedurally

barred from review based on the basis of *res judicata* since Williams raised a manifest weight of

the evidence claim on direct review.  It reasoned:

> {¶ 9} Williams's sole assignment of error is barred from further review by the
> doctrine of res judicata. *See generally State v. Perry*, 10 Ohio St.2d 175, 226
> N.E.2d 104 (1967).  The Supreme Court of Ohio has also established that a claim
> of ineffective assistance of appellate counsel may be barred from further review,
> in an App.R. 26(B) application for reopening, by the doctrine of res judicata. *State
> v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992).

> {¶ 10} The issue of manifest weight was previously raised and argued on direct
> appeal.

*Id*.  After quoting the state appellate court's prior analysis of Williams' manifest weight claim,

the court held, in the alternative, that Williams' claim lacked merit.  *Id.* at **2-3.

Williams did not file a traverse and therefore has not responded to Respondent's

procedural default defense.  It is not entirely clear why the state appellate court interpreted

Williams's claim that appellate counsel was ineffective for failing to raise trial counsel's

ineffectiveness as a manifest weight of the evidence claim.  The Sixth Circuit has held that "an

incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and

independent state ground."  *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012).  The court

has "declined to observe Ohio's procedural bar and instead [has] proceeded to the merits of an ineffective-assistance claim when [it has] concluded that Ohio improperly invoked its res judicata rule." *Richey, v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007).

This Court, however, need not determine whether the state court correctly applied the doctrine of *res judicata*, as the Court is not required to decide whether ground three is procedurally defaulted. As explained in detail below, Williams' ineffective assistance of appellate counsel claim lacks merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts may skip complicated "procedural-bar issues" if the merits are "easily resolvable against the habeas petitioner").

Conversely, the Court does find that Williams's fourth ground for relief    a claim of ineffective assistance of *trial* counsel    is procedurally defaulted, but for a different reason than Respondent submits. Williams raised only an ineffective assistance of *appellate* counsel claim in his Rule 26(B) application. The state appellate court's res judicata ruling, therefore, applied only to that claim and not the ineffective assistance of *trial* counsel claim underlying it.

Williams defaulted his *trial* counsel ineffective assistance claim because he never raised it on direct review in state court and now is precluded from doing so. In Ohio, where a prisoner is represented by new counsel on direct appeal, as Williams was, claims of ineffective assistance of trial counsel that do not rely on evidence outside the record, which Williams' claim does not, must be raised on direct appeal, or they will be waived under the doctrine of *res judicata*. *See, e.g., State v. Cole*, 2 Ohio St. 3d 112, 113-14 (Ohio 1982); *Combs v. Coyle*, 205 F.3d 269, 275  77 (6th Cir. 2000). Williams failed to present this claim to state courts on direct appeal, and it is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848 (if a petitioner fails to fairly present

-11-

any federal habeas claims to the state courts but has no remaining state remedies, then the petitioner has procedurally defaulted those claims).  Moreover, Williams does not argue that the procedural bar of this claim should be excused based on a showing of cause and prejudice or actual innocence.  Finally, ground four is largely redundant of the claim in ground three, which the Court addresses through the lens of an ineffective assistance of appellate counsel claim.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th

-12-

Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that

-13-

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786 87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**A.      Grounds Two and Three: Sufficiency of the Evidence and Manifest Weight**

In his first two grounds for relief, Williams asserts that his conviction for felonious assault was not supported by substantial evidence, and, furthermore, that his conviction was also against the manifest weight of the evidence. (ECF No. 1.) This Court construes the petition as raising only a sufficiency claim, as a claim that a conviction is against the manifest weight of the evidence is not cognizable upon federal habeas review. *See Nash v. Eberlin*, 258 Fed. App'x. 761, 765, n. 4 (6th Cir. 2007); *Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 (S.D. Ohio 2006) (*citing Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983)). Unlike "manifest weight claims," "insufficient evidence" claims are cognizable in habeas under the Fourteenth Amendment's Due Process Clause. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It does bear noting that, "the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Nash*, 258 Fed. App'x at 765.

-14-

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 U.S. App. LEXIS 29301, 1993 WL 460782 at * 3 (6th Cir. 1993) citing *Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury     not the court     to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees

-15-

with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 , 772, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

In his petition, Williams asserts the following facts support his sufficiency claim:

Insufficient evidence was presented by the prosecutor to sustain and support the conviction of defendant for felonious assault.  In the police report given by the ***son of a detective***, and the State's witness Montell Robinson, he and other males did approach the defendant taunting and teasing with their fists balled up looking for a fight.  Thus clearing [sic] showing that the Defendant in this case is the victim.  By the using of the phrase "WE" would clearly show that there were more than one in on the taunting and teasing of the lone male.

As well as the fact Montell Robinson perjured  himself at trial, with the testimony that the Defendant leaped a great deal across the church's parking lot roundhouse kicking the victim Jaylin Kirkman in the face.  When it is Kirkman's testimony that Robinson the son of the detective (Whose father was involved in the arresting of the Defendant) was inside the church at the time he was kicked.

The victim, J. Kirkman goes on to testified [sic] he was kicked by the Defendant who was standing one to two feet behind him to his left, and kicking up and to the right with his left leg, kicking him in the mouth, (The victim Jaylin Kirkman is 6'2" tall.) though he continues that the Defendant doesn't fall, or use anything to hold on to to [sic].  And from this kick he wants the courts to believe from this

-16-

kick, at this angle was enough force to force all his front teeth back into his mouth, but Kirkman goes on to testify that he fell to his knees, when a kick of this much force, from the position he stated should have made him fall backwards.

Attorney Passalacaqua at no time thought to bring in an expert witness to show indeed that Kirkman was lying about the way in which he was kicked in the mouth.

No subpoena was issued to the the [sic] little girl the mother Nicole Jones stated in her testimony that came into the church and told her that Jaylin had been kicked in the mouth, showing that she had to see what happened, and not Montell Robinson.

(ECF No. 1 at 4.)

Williams did not file a traverse and, therefore, the above constitutes the entirety of his argument.

The state appellate court found no merit to Williams's sufficiency and manifest weight claims explaining as follows in a lengthy and thorough discussion:

{¶ 3} In this appeal, Williams asserts two assignments of error.  First, Williams challenges the sufficiency of the evidence presented to support a conviction for felonious assault.  Williams argues that the evidence failed to identity him as the assailant.  He further argues that the injury sustained by the victim did not rise to the degree of seriousness required under the statute.  In his second assignment of error, Williams contends that the jury verdict was against the manifest weight of the evidence due to uncertainties in witness testimony at trial. We find no merit to these arguments.

{¶ 4} Evidence is sufficient to sustain a guilty verdict where, examining the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt.  *State v. Griffith*, 8th Dist. Cuyahoga No. 97366, 2012-Ohio-2628, ? 3, *citing State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 5} The state charged Williams with felonious assault under R.C. 2903.11(A)(1), which states in relevant part that "[n]o person shall knowingly *** [c]ause serious physical harm to another ***."  The evidence presented was sufficient to show that Williams intentionally kicked the teen victim in the mouth

-17-

causing him serious injury.  At trial, one of the witnesses testified that while driving to the church for choir practice, she noticed a man acting disorderly and screaming profanities at a nearby house prior to the incident.  She described this individual to the police, and at trial testified that Williams might be the same person she saw earlier.  Additionally, officers arriving at the scene after the attack interviewed witnesses who described the suspect as a black male, approximately 35 years of age and wearing a red shirt with the letter "H" in white print on it.  He was also described as wearing gray or black pants.

{¶ 6} The police drove around the neighborhood and saw two men walking who were wearing red shirts.  The younger of the two appeared considerably younger than 35 and was wearing white pants.  The other man was wearing dark colored pants, and his shirt had a white "H" on the front of it.  Both men ran but the officers were able to capture the older man who was later identified as Williams.

{¶ 7} The victim, who testified to standing at one point approximately one to two feet away from the person who kicked him, identified Williams as his attacker.  Williams was also identified by the victim's friend who first encountered the assailant in the parking lot.  At trial, this witness described his level of certainty as "100 percent" with regard to the identity of Williams as the assailant.

{¶ 8} Additionally, we find that the victim's injuries were "serious" as required by R.C. 2903.11(A)(1).  Serious physical harm is defined in R.C. 2901.01(A)(5).  As applicable to this case, serious injury includes "[a]ny physical harm that involves * * * temporary, substantial incapacity * * * temporary, serious disfigurement * * * or that involves any degree of prolonged or intractable pain."  R.C. 2901.01(A)(5)(c-e).

{¶ 9} The victim's mother testified at trial that as a result of being kicked in the mouth, her son's jaw was broken and had to be wired shut for two and a half months.  During this time, he was medicated with morphine and oxycontin for pain management and placed on a liquid diet.  The victim lost 15 to 16 teeth, which had to be replaced with dental implants.  These injuries clearly rise to the level of seriousness outlined in R.C. 2901.01(A)(5).

{¶ 10} For the above reasons, we conclude that the evidence was sufficient to support Williams's conviction for felonious assault.

{¶ 11} Williams next argues that his conviction is against the manifest weight of the evidence.  A manifest weight of the evidence standard of review requires a reviewing court to examine the record as a whole and weigh the evidence, all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving evidentiary conflicts, the trier of fact clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574, citing *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist. 1986).

{¶ 12} According to Williams, none of the trial witnesses could say with absolute certainty that he was the person who kicked the victim. Williams further claims that the victim in this case was too distraught to give an accurate account of the events of that day, and that all other witnesses called by the state are equally unreliable because they never actually saw the attack occur. Moreover, Williams makes much of the fact that the man walking next to him at the time of his arrest was also wearing a red shirt.1 *3

{¶ 13} We find, however, that there is an overwhelming amount of evidence indicating Williams is the assailant. Several witnesses placed Williams on the church's property the day of the incident. Police investigating the scene interviewed a woman living in a house neighboring the church where the assailant was seen. She identified the assailant by the name "Tommy." Williams was also identified by the victim as well as the teenager involved in the verbal altercation. Both of these witnesses were in a position to see the assailant at close range. Other witnesses were able to place Williams in the neighborhood and described his demeanor as agitated. Williams's clothing matched the description of that worn by the assailant, and he was found in walking distance from the church. After reviewing the record, we cannot agree that the jury lost its way by finding that the evidence presented was competent and credible enough to warrant a conviction.

{¶ 14} Lastly, Williams argues that the way the victim claims to have been attacked is physically impossible. Williams states that its impossible to "round-house" kick someone without either falling or having something to lean on for support. We summarily reject this argument. Contrary to Williams's statement that no testimony was given describing exactly how this kick occurred, at trial the victim sufficiently recounted the events leading to his injury. He was able to give a detailed account of the way Williams kicked him. For these reasons, we find Williams's argument on this point without merit.

*Williams*, 2013-Ohio-3532 at ¶¶3-14.

Williams's assertion that Robinson perjured himself is essentially a challenge as to his credibility, and this Court may not weigh the credibility of witnesses on habeas review. Also, to the extent Williams believes that conflicting inferences can be gleaned from the testimony

presented at trial, those too must be resolved in favor of the prosecution. Williams's belief that different inferences can be drawn from the testimony is simply not enough to support a sufficiency claim. Notably, Williams's petition does not argue that there was insufficient evidence to identify him as the assailant and, therefore, the Court deems such an argument waived. To the contrary, Williams believes he was the victim because the teenage boys taunted him, teased him, and balled up their fists. (ECF No. 1 at 4.)

The state court's well-reasoned decision was not an unreasonable determination of the facts in light of the evidence presented. Nevertheless, This Court has conducted its own independent review of the transcript and finds the state court accurately summarized the evidence presented at trial. (ECF No. 5.) There was ample evidence to support Williams's conviction for felonious assault. First, the victim unequivocally testified that the assailant kicked him in the face when he began to walk away from him. (ECF No. 5, Tr. 404-05.) An eyewitness, the victim's teenage friend Montel Robinson, also testified that he saw Williams kick the victim in the mouth. (Tr. 335-36, 342.) There was also sufficient evidence of serious injury. Cynthia Robinson testified that the victim's mouth was all bloody (Tr. 250), and the victim's mother, Nicole Jones, testified that immediately after the incident she observed her son's teeth pushed back to the roof of his mouth, as well as lots of blood. (Tr. 289, 300.) Jones further testified that the victim's jaw was broken and needed to be wired shut for 2.5 months. (Tr. 307-09.) The victim was also prescribed Oxycodone for pain. (Tr. 310, 416.)

As such, Williams's first two grounds for relief are without merit.

**B.      Ground Three:  Ineffective Assistance of Appellate Counsel**

As explained above, Williams claims in his third ground for relief that his appellate

counsel provided ineffective assistance by failing to raise on direct review a claim of ineffective

assistance of trial counsel.  Specifically, he contends that his trial counsel performed deficiently

by failing to:  (1) impeach State witness Montel Robinson with his prior inconsistent statement to

police that he and a friend taunted him with their fists balled up, "looking for a fight," before the

attack; (2) impeach Robinson with the victim's testimony that Robinson was inside the church

when the assault occurred; (3) present an expert witness to show that the victim lied on the stand

about the way he was kicked; (4) locate and present at trial a young girl who witnessed the

incident; and (5) expose "other conflicting statements" and perjured testimony of witnesses.

(Doc. No. 1 at 4, 6.)  Respondent does not address the merits of this claim in her Return of Writ.

The United States Supreme Court has held that a defendant is entitled to effective

assistance of counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396

(1985).  The Court's two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),

applies to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259,

285 (2000).  Thus, Williams must demonstrate that his counsel's conduct was so below

acceptable standards of representation that counsel was not functioning as "counsel" guaranteed

by the Sixth Amendment to the United States Constitution.  *Strickland*, 466 U.S. at 687.  He also

must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an

extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient

performance must have "caused the defendant to lose what he otherwise would probably have

won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of

-21-

probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).  Williams therefore must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to counsel's sound professional judgment, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

The state appellate court provided the following brief analysis of Williams' appellate counsel ineffective assistance claim:

> {¶ 11} Consideration of Williams's sole assignment of error, premised upon credibility of the witnesses, inconsistent testimony, and conflicting testimony, would not have resulted in a different outcome on appeal. Thus, Williams was not deprived of the guarantee of effective assistance of appellate counsel and has failed to establish a basis for the reopening of his original appeal.

*Williams,* 2014 WL 1340222, at *3.  Although, as explained above, the state court also found this

claim barred by the res judicata rule, AEDPA deference applies to a state court's alternative

merits ruling.  *See, e.g., Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) ("an alternative

procedural-bar ruling does not alter the applicability of AEDPA").

The state appellate court's conclusion was reasonable.  Williams' appellate counsel could

have decided, based on sound professional judgment, not to raise an ineffective assistance of trial

counsel claim on the grounds Williams advances.  Williams' complaints regarding his trial

counsel's performance are either weak or entirely unfounded.

Williams first alleges that counsel should have impeached Robinson with his statement to

police that he and a friend had taunted Williams and were "looking for a fight" before the assault

took place.  He claims the statement shows that "more than one" "male" was taunting him, and

he, as the "lone male," was "the victim."  (Doc. No. 1 at 4.)  This claim is belied by the record.

Defense counsel was aware of Robinson's statement and its significance to Williams'

defense.  She questioned Officer Eric Newton, one of the last witnesses to testify, directly about

the statement, which he had included in a report.  She asked him, "[A]s part of your

investigation, you learned that Montel Robinson, when the defendant   when the suspect was

walking through the parking lot, that Montel Robinson approached him and was coming after

him, correct, with his fists balled, with the rest of the group?"  (Doc. No. 5-8 , Tr. 583.)  She then

honed in on the presence of other boys threatening Williams in this exchange:

> Q:     Okay.  And there was further information that you received that there was
>        the other boys with the group that [Robinson] was with that were also
>        approaching the suspect, correct, in a taunting manner, I believe it says?
>
> A:     The only one that was available to me was Montel Robinson, and that's

-23-

where I got the information, was from him.

Q:    Right.  Montel, this witness that was actually there that night.  And you weren't, by the way, right?  You weren't there during the incident, right?

A:    That's correct.

Q:    So the information in your investigation that you learned is that Montel Robinson, with his fists balled up, and the other boys with him, approached the suspect in a taunting manner, to go and fight, correct?  Is that what it says?

A:    That is what it ways.

Q:    All right.  So that's what you learned that night, correct?

A:    Correct.

(Tr. 585-85.)

Moreover, although defense counsel did not directly reference the statement at issue during Robinson's cross-examination, she vigorously and effectively questioned him about whether he and other boys had taunted and provoked Williams before the assault.  Counsel elicited from Robinson that there were eight boys ranging in age from thirteen to seventeen playing basketball shortly before the incident.  (Doc. No. 5-7, Tr. 353, 369.)  Upon further questioning, Robinson testified that he sent the younger boys inside the church when the altercation between him and Williams began, leaving only him and the victim outside when the attack occurred.  Counsel then had Robinson confirm that another boy, Aaron, was not with them during the altercation even though that may contradict another witness' testimony.  (Tr. 374-75.)  In addition, counsel was able to get Robinson to agree that he became angry when Williams shouted threats and obscenities at him, and that he eventually approached Williams, saying, "Come on.  Let's fight."  (Tr. 359-66, 367.)  Defense counsel also aggressively quizzed Robinson

-24-

about his testimony that the victim, his best friend, was not involved in the argument between him and Williams, and did nothing more than continue to dribble the ball until he stopped Robinson from further approaching Williams. (Tr. 367-69.) She queried, "But you don't go in to protect yourself or Jaylen doesn't go in to protect himself; instead, [the victim] stands out there right by the sidewalk with crazy man looking at him, right? . . . Does that make sense to you?" (Tr. 370.)

Defense counsel also questioned the victim at length about the events prefacing the attack. She asked him about his statement to police that Robinson was 'hot-headed" and responded angrily to Williams' provocation. (Tr. 420-22.) She established that there were five boys and three girls on the playground before the assault. (Tr. 423-27.) She also attempted to establish that Robinson was taunting Williams. She asked the victim, for example: "So, but [Robinson's] still a young, teenage man. He's angry. And he goes after this guy that's calling him names, right?" (Tr. 430.) (The victim replied, "No. He didn't go after him." *Id*.) Counsel also elicited that Robinson was "coming up behind" Williams and yelling at him, "'You want to fight? I'll fight you.'" (Tr. 431-32.)

Thus, defense counsel effectively employed Robinson's statement to police in her cross-examination of the victim, Robinson, and Officer Newton. Counsel's decision not to question Robinson about it directly may have been reasonable trial strategy. Had Robinson been asked about it, he may easily have clarified what he meant and resolved any contradiction. By waiting until Officer Newton testified to introduce the statement, counsel ensured the statement remained unchallenged. *See Pinholster,* 131 S. Ct. at 1404 (instructing habeas courts reviewing ineffective-assistance claims to "begin with the premise that 'under the circumstances, the

challenged action[s] might be considered sound trial strategy'" (quoting *Strickland,* 466 U.S. at 689)).  Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Strickland,* 466 U.S. at 690.

Williams next complains that trial counsel failed to impeach Robinson and undermine his entire account of the incident with the victim's testimony that Robinson was inside the church when the attack occurred.  This claim, however, is contradicted by the record.  The victim did not testify that Robinson was inside the church when the assault took place.  He consistently testified that once he had calmed Robinson down, Robinson began walking away from him and Williams, and it was at that point that Williams kicked him.  (Tr. 401.)  ("Once I calmed Montel down, he started walking away, walking away towards the lawn."); (Tr. 402) ("when Montel went to walk away, like started to walk away, and when I started walking away, he, the defendant, walked up on me . . ."); (Tr. 403) ("But I had calmed down Montel, and he was walking away."); (Tr. 437) ("so I calmed him down, whatever, and he started walking back forwards [*sic*] the church like"); (Tr. 440) ("he started walking back then").)  The victim stated after the attack, "Montel ran back to [him]" and they both ran into the church.  (Tr. 406.)  Officer Shane Bauhof also testified that he understood Robinson "witnessed it all."  (Doc. No. 5-8, Tr. 486.)

The Court can identify only one statement during the victim's testimony that in any way suggested Robinson had entered the church before the assault occurred.  The victim testified, "Montel started walking back *in* the church, and I was still dribbling my basketball . . . ."  (Doc. No. 5-7, Tr. 440 (emphasis added)).  Viewing the victim's testimony as a whole, this statement is not so much contradictory as it is imprecise.  As such, this claim also lacks merit.

The Court also finds no merit to Williams's contention that his trial counsel was

-26-

constitutionally deficient for failing to present an expert witness to show that the victim lied on the stand about the manner in which he was kicked.  This claim is speculative.  Without knowing the content of the expert's testimony, Williams cannot demonstrate either that his counsel was deficient in not obtaining an expert, nor can he demonstrate prejudice by the expert's absence. Moreover, the state court rejected Williams' related argument that the manner in which the victim claimed he was attacked was physically impossible.  It explained,

> Williams states that [it's] impossible to "round-house" kick someone without either falling or having something to lean on for support. We summarily reject this argument. Contrary to Williams's statement that no testimony was given describing exactly how this kick occurred, at trial the victim sufficiently recounted the events leading to his injury.  He was able to give a detailed account of the way Williams kicked him.

*Williams*, 2013 WL 4140073, at *3.

Williams' remaining criticisms of his trial counsel's performance are completely unfounded.  His claim regarding counsel's failure to present at trial the "little girl" who he alleges witnessed the assault is speculative.  Williams does not explain who the girl is or what she saw, nor does he assert that his counsel failed to find the girl and interview her.  Finally, Williams's complaint about "other conflicting statements" is too vague and lacking in argumentation for the Court to consider.  *See, e.g., United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011) ("Because there is no developed argumentation in these claims, the panel declines to address [the defendant's] general assertions of misconduct in witness questioning and closing statements.").

Even assuming *arguendo* that some of the actions of counsel were deficient, Williams cannot demonstrate that he was prejudiced by these actions.  Concomitantly, he also cannot

-27-

demonstrate any prejudice from appellate counsel's failure to argue trial counsel's ineffectiveness.  This is because the evidence against him, quoted above, was substantial.  Under AEDPA, state court's factual determinations are afforded a "presumption of correctness," which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  Given the weight of the evidence introduced at trial, there is not a reasonable probability that the jury would have acquitted Williams.

Accordingly, the state court's determination that Williams' appellate counsel did not provide ineffective assistance in failing to raise an ineffective assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, *Strickland* and its progeny.

### V.  Conclusion

For the foregoing reasons, it is recommended that Williams' Petition be DENIED.

/s/ Greg White_____
U.S. MAGISTRATE JUDGE


Date: February 22, 2016

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**